UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA,          :
                                   :   19 CR 819 (VM)
                                   :
      - against -                  :   **DECISION AND ORDER**
                                   :
JOSE SANTOS,                       :
                                   :
                  Defendant.       :
-----------------------------------X

**VICTOR MARRERO, United States District Judge.**

By letters dated June 4 and June 19, 2020, defendant Jose Santos ("Santos") moves for bail or temporary release from detention pursuant to 18 U.S.C. Sections 3142 ("Section 3142") and 3145 ("Section 3145"). (See "Bail Application," Dkt. No. 19; "Reply," Dkt. No. 26.) The Government opposes the Bail Application by letters dated June 12 and June 22, 2020. (See "Opposition," Dkt. No. 24; "Government Response," Dkt. No. 27.) For the reasons set forth below, the Court denies the Bail Application.[1]

## I.   BACKGROUND

Santos has been charged with one count of participating in a narcotics conspiracy in violation of 21 U.S.C. Sections 846 and 841(b)(1)(A), based in significant

---

[1] While Santos requested a hearing (see Bail Application), the Court finds one unnecessary under these circumstances. The parties' briefing provides a sufficient record for decision, and the Court declines to reopen the initial bail hearing under Section 3142(f). See United States v. Livingston, No. 20 CR 52, 2020 WL 1853662, at *1 & n.1 (S.D.N.Y. Apr. 10, 2020).

part on a transaction involving one kilogram or more of
heroin. (See Dkt. No. 6.) While Santos was initially
detained on consent, the COVID-19 pandemic and Santos's
desire for a trial on the merits led him to revisit his
previous decision regarding detention. Santos first moved
Magistrate Judge Kevin Fox ("Judge Fox") for bail on May
20, 2020. Judge Fox denied Santos' motion for bail upon a
hearing on May 21, 2020, finding that Santos's proposed
bail conditions did not adequately mitigate his risk of
flight. (See Bail Application at 1.)

Santos subsequently filed the Bail Application before
this Court on June 4, 2020, initially asking that the Court
schedule a hearing and review Judge Fox's determinations
for clear error pursuant to Federal Rule of Criminal
Procedure 59(a) ("Rule 59"). Santos broadly raises three
grounds for objection to Judge Fox's decision: (1) failure
to fully entertain arguments regarding Santos's immigration
status, which allegedly would have shown Santos was not a
flight risk; (2) failure to make findings sufficient to
disregard Pretrial Services' bail recommendation; and (3)
failure to address the Government's allegedly erroneous
attribution of inculpatory statements to Santos, which
would allegedly undermine the case for detention. (See id.

at 1-2.) The Bail Application attaches Santos's earlier letters to Judge Fox, which included an additional argument for temporary release from detention based upon Santos's asthma and high blood pressure, which place him at a higher risk of negative complications from infection during the ongoing COVID-19 pandemic. (See Dkt. No. 19-1 at 4-5.)

The Government opposed Santos's Bail Application on June 12, 2020. It emphasizes Judge Fox's findings that Santos presents a flight risk because he has been charged with a crime carrying at least a ten-year term of imprisonment and because he is subject to removal from this country after having exhausted his challenges to the determination of his immigration status. (See Opposition at 2.) According to the Government, Judge Fox allowed Santos's counsel the opportunity for supplemental arguments regarding his immigration status at the beginning of the May 21, 2020 hearing, and Santos waived his opportunity by seeking to present those arguments only after Judge Fox denied Santos's request for bail. (See id. at 3-4.) The Government adds that Judge Fox fully considered Pretrial Services' bail recommendation and explicitly declined to adopt it on the record. (See id. at 4.) The Government also asserts that Santos's arguments regarding the allegedly

3

false inculpatory statements are irrelevant because Judge Fox did not rely on them in denying Santos's motion. (<u>See</u> <u>id.</u> at 4–5.) However, the Government nevertheless attached as an exhibit to the Opposition a transcript of the allegedly misrepresented incident. (<u>See</u> Dkt. No. 24-2.)

Santos replied in further support of the Bail Application on June 19, 2020. Santos clarifies that this Court should review the bail application de novo pursuant to Section 3145, rather than for clear error under Rule 59, as previously argued in the Bail Application. (<u>See</u> Reply at 1.) Santos first challenges the notion that he is a flight risk, noting that he lacks a criminal history, was a conditional permanent resident who has lived in this country for over a decade, and further intends to secure new immigration counsel to challenge his removal after the conclusion of this criminal case. (<u>See</u> <u>id.</u> at 2–3.) Santos then expands upon his arguments regarding the erroneous attribution of false inculpatory statements, based upon the transcript provided by the Government in its Opposition. Santos states that the transcript provides no basis for the following proposition, which the Government relied upon in securing an arrest warrant for Santos: "After Santos sat down in the back passenger seat of Vehicle-1, [a

confidential source, "CS-1"] asked [co-defendant Francisco Torres-Rendon ("Torres-Rendon")] for the narcotics. Santos responded, in substance and in part, that he had the narcotics and proceeded to hand CS-1 a black plastic bag containing two small bricks of purported heroin. CS-1 opened the black plastic bag and confirmed with Santos and Torres-Rendon that the narcotics were contained in that bag." (Id. at 3–5.) Santos presses that the transcript's failure to corroborate this statement, and the Government's failure to provide the transcript before filing its Opposition, undercut the strength of the Government's case and weigh in favor of granting the Bail Application.

The Government countered Santos's arguments regarding the allegedly false inculpatory statements on June 22, 2020. The Government denies claiming that Santos explicitly admitted he was providing narcotics during the incident in question, instead arguing that Santos indicated as much in substance through his actions. (See Government Response at 2–3.) The Government notes that Santos had been entrusted with a bag containing a significant quantity of heroin, had removed it from his car to the vehicle with Torres-Rendon and CS-1, and then voluntarily provided the bag of narcotics to CS-1 only after CS-1 indicated he would deal

5

with Torres-Rendon and Santos. (See id.) The Government states that their case against Santos was bolstered by a search of Santos's car arising from the same incident, which revealed the presence of another controlled substance commonly used as a cutting agent for narcotics. (See id.)

## II.   <u>LEGAL STANDARDS</u>

Santos first requested that this Court review Judge Fox's denial of bail pursuant to Rule 59, which provides that a district court judge must "modify or set aside any part of [a magistrate judge's] order that is contrary to law or clearly erroneous." Rule 59(a). Santos now requests that this Court review the Bail Application pursuant to Section 3145, which allows a person ordered detained by a magistrate judge to "file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the [detention] order." Section 3145(b). Section 3145 requires that a Court review bail applications de novo. See United States v. Leon, 766 F.2d 77, 80 (2d Cir. 1985) ("[A] district court should fully reconsider a magistrate's denial of bail and in ruling on a motion for revocation or amendment of a detention order should not simply defer to the judgment of the magistrate, but reach its own independent conclusion.").

6

Section 3142 sets forth the considerations governing whether a judicial officer should release or detain a pretrial defendant. In relevant part, Section 3142(e) establishes a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)." Section 3142(e)(3)(A). At all times, the Government nonetheless bears the burden of proving by a preponderance of the evidence that a defendant is a flight risk. See United States v. English, 629 F.3d 311, 319 (2d Cir. 2011). "[I]n determining whether there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community," a court shall take into account available information concerning the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community

7

that would be posed by the defendant's release. See Section 3142(g).

Alternatively, Section 3142(i) provides that a court may "permit the temporary release of [a pretrial defendant], in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Section 3142(i). "In considering whether there is a compelling reason for a defendant's release under this provision, however, a court must balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." United States v. Chambers, No. 20 CR 135, 2020 WL 1530746, at *1 (S.D.N.Y. Mar. 31, 2020) (internal quotation marks omitted).

## III. **DISCUSSION**

The Court notes at the outset that it will review Santos's Bail Application de novo pursuant to Section 3145. It nonetheless reaches the same conclusion as Judge Fox through its independent consideration. Santos presumptively presents a substantial risk of flight, and the various considerations advanced by Santos neither rebut this

presumption nor otherwise persuade the Court that granting bail would be appropriate. The Court first outlines why Santos presents a flight risk and then addresses Santos's arguments regarding the allegedly false inculpatory statement, Pretrial Services' bail recommendation, and Santos's health conditions.

A.   <u>RISK OF FLIGHT</u>

Because Santos has been charged with an offense under the Controlled Substances Act that carries a maximum term of imprisonment exceeding ten years, Santos is subject to a rebuttable presumption that no set of bail conditions would reasonably assure his appearance. <u>See</u> Section 3142(e)(3)(A); Dkt. No. 6. Santos is charged with conspiring to distribute one kilogram or more of heroin, placing his conduct squarely within the relevant provisions of the Controlled Substances Act. The nature and circumstances of the alleged conduct thus correspond to the type of dangerous controlled substance offense specified in Section 3142(g)(1), even if the underlying conduct involved a single transaction rather than a larger conspiracy.

The presumption established by Santos's alleged conduct is strengthened by the circumstances of his immigration status. While the minimum ten-year sentence

that Santos might face is enough to create a flight risk, Santos is also subject to a removal order and has already exhausted challenges to that determination. As a citizen of the Dominican Republic with an outstanding warrant for his removal, Santos has an added incentive to avoid further interactions with the government that might lengthen the period of his detention.

Santos states in his Reply that his current immigration status does not weigh in favor of detention, as he has lived in this country for over a decade, was previously a conditional permanent resident, and followed the proper legal processes for challenging the unfavorable determination of his immigration status. (See Reply at 2–3.) These arguments are not without merit, but they are also not sufficient to rebut the presumption in favor of detention. They do not clearly address the issue of Santos's pending removal order. They also do not adequately address the possibility that fleeing to other family members in the Dominican Republic might be preferable to staying in the United States if the latter could result in more than a decade of incarceration for Santos. While Santos apparently intends to hire new immigration counsel to challenge his removal, at the moment his allegations to

this effect are simply too vague to provide substantial reassurance that he would appear in light of the incentives to avoid either a lengthy criminal term of incarceration or detention by Immigrations and Customs Enforcement ("ICE"). Multiple courts have held that the combination of a significant potential term of imprisonment and a pending removal order presents a serious risk of flight justifying detention. See, e.g., United States v. Alvarez Rivera, No. 19 CR 82, 2020 WL 2745726, at *7 (M.D. Pa. May 27, 2020); United States v. Sagastume-Galicia, No. 19-mj-287, 2020 WL 2486423, at *2 (D.D.C. Apr. 22, 2020); United States v. Vizcaino, No. 20 CR 241, 2020 WL 1862631, at *2 (S.D.N.Y. Apr. 14, 2020). On balance, the history and characteristics of the defendant reflected in the record still weigh in favor of denying Santos's Bail Application at this time.

B.   SANTOS'S ARREST AND INCULPATORY STATEMENTS

Santos's arguments focus in large part on the strength of the Government's case and the representations regarding his culpability. However, the Court agrees with Judge Fox that the events underlying Santos's arrest amply support the determination that there was probable cause to believe he committed the charged offense, and the weight of the evidence reinforces the denial of bail.

11

As Judge Fox and the Government suggested, the sequence of events surrounding Santos's arrest largely render his focus on the allegedly false statement unpersuasive. Santos first drove to the location where Torres-Rendon and CS-1 were, transporting a black bag containing a significant quantity of heroin. While Santos denied knowledge of the bag's contents, the amount of heroin at issue suggests that he would not have been randomly chosen to transport it. Santos then entered Torres-Rendon's car with the bag of narcotics as Torres-Rendon discussed narcotics transactions with CS-1.

Santos primarily faults the Government for stating that he then said "in substance or in part, that he had [] narcotics" and confirmed the black bag contained narcotics, when the transcript of the incident reflects that he only said "[h]ow are you, brother?" (See Dkt. No. 24-2, at 3.) It is true that Santos did not explicitly claim to have narcotics. But the transcript broadly supports the Government's description of Santos's involvement in the transaction, and that Santos indicated he had narcotics through his actions. The transcript reflects that Santos greeted and handed CS-1 the bag of narcotics immediately after CS-1 referred to exchanging "stuff" for money, and

12

CS-1 continued referring to the same subject matter as Santos handed him the bag. (See id. at 3-4.) The transcript next reflects that CS-1 checked something in the car (see id. at 4); as Santos was in the car and had just provided CS-1 with the bag, it is fair to assume that CS-1 was confirming with Santos that the black bag contained the narcotics that had just been discussed. While the allegedly false inculpatory statement does not literally describe the events in the vehicle, there is nevertheless substantial reason to believe that Santos was aware of the black bag's contents and his role in its exchange.

That law enforcement officers discovered a cutting agent in Santos's car shortly after arresting Santos during the incident described above only strengthens the case for denying the Bail Application. See United States v. Crosby, No. 19 CR 286, 2020 WL 1638685, at *2 (D. Md. Apr. 2, 2020) (noting presence of cutting agents strengthens case for detention under Section 3142). Despite Santos's suggestions to the contrary, the weight of the evidence certainly does not suffice to rebut the presumption that Santos is a flight risk. Rather, it supports the presumption as well as the Government's arguments that Santos was involved in a crime of drug trafficking that endangers the community.

13

C.   <u>PRETRIAL SERVICES' BAIL RECOMMENDATION</u>

Santos next challenges the presumption that he is a flight risk by noting Pretrial Services' recommendation that conditions including home incarceration would reasonably assure his future appearance in this case. Judge Fox considered this recommendation in full, declining to adopt it after discussing the matter directly with a representative of Pretrial Services on the record. (<u>See</u> Dkt. No. 24-1, at 6:19-7:16, 10:11-12:16, 16:19-17:3.) The Court recognizes Santos's arguments that these conditions could potentially discourage flight, but it agrees with Judge Fox's conclusion that the conditions are not adequate under the circumstances. As an initial note, the pandemic necessarily constrains Pretrial Services' ability to effectively monitor defendants, even after imposing home incarceration. <u>See, e.g.</u>, <u>United States v. Belardo</u>, No. 20 CR 126, 2020 WL 1689789, at *2 (S.D.N.Y. Apr. 7, 2020). And as the Government further observed, the pending removal order against Santos means that he may well end up in ICE custody instead of home incarceration. As Judge Fox noted, this factor would necessitate closer pretrial supervision at a time when supervision must necessarily be looser. (<u>See</u> Dkt. No. 24-1 at 16:9-18.) Overall, the Court is not

14

persuaded that Pretrial Services' proposed bail package is sufficient to rebut the presumption in favor of detention, considering both the pandemic's constraints on comprehensive monitoring and the specific possibility that Santos's removal order would subject him to ICE detention and thus frustrate the proposed bail conditions.

D.   <u>SANTOS'S HEALTH CONDITIONS</u>

Apart from Santos's arguments pursuant to Section 3142(g), Santos also appears to argue for temporary release from detention pursuant to Section 3142(i). Santos does not argue that temporary release is necessary for preparation of his defense. Instead, he argues that asthma and high blood pressure put him at greater risk of negative complications from infection by the coronavirus, which constitutes a compelling reason justifying his temporary release. (<u>See</u> Dkt. No. 19-1 at 4-5.) Multiple courts have found that the combination of the COVID-19 pandemic and a defendant's serious medical conditions may be a compelling reason counseling in favor of bail under the defendant's particular circumstances. <u>See</u>, <u>e.g.</u>, <u>United States v. Perez</u>, No. 19 CR 297, 2020 WL 1329225 (S.D.N.Y. Mar. 19, 2020).

However, numerous courts have nevertheless denied bail to defendants with underlying health conditions where the risks that justified the defendants' initial detention continued to outweigh the risks that the coronavirus might pose for the defendants. See, e.g., Chambers, 2020 WL 1530746, at *1 (denying bail to defendant with asthma); United States v. Gumora, No. 20 CR 144, 2020 WL 1862361, at *9, 11 (S.D.N.Y. Apr. 14, 2020) (denying temporary release where defendant with asthma and high blood pressure remained a flight risk and danger to community). The Court is mindful of the dangers presented by the COVID-19 pandemic and is sympathetic to incarcerated defendants in light of the concerns it must raise. But the Court must weigh these considerations against those counseling in favor of continued detention. As detailed above, Santos's alleged conduct, the lengthy term of incarceration he may face, and the concerns raised by his removal order and outstanding warrant all suggest a substantial risk of flight. Much as the other arguments advanced by counsel failed to outweigh this serious risk, so too do arguments focused on Santos's health. Accordingly, the Court will deny Santos's Bail Application at this time.

## IV.   <u>ORDER</u>

For the reasons discussed above, it is hereby

**ORDERED** that the motion of defendant Jose Santos for bail or temporary release from detention (Dkt. Nos. 19, 26) is **DENIED.**


**SO ORDERED.**

Dated:   New York, New York
         24 June 2020

                              Victor Marrero
                              U.S.D.J.

17